Public Version

UNITED STATES COURT OF INTERNATIONAL TRADE
Before: Hon. Timothy R. Katzman, Judge

| | |
|---|---|
| Kumar Industries<br><br>                  Plaintiff,<br><br>    v.<br>United States,<br><br>                  Defendant. | Court No. 23-00263 |

**MEMORANDUM OF LAW IN SUPPORT OF THE
RULE 56.2 MOTION OF PLAINTIFF KUMAR INDUSTRIES
FOR JUDGMENT UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiff

Dated: June 3, 2024

# Table of Contents

Table of Contents.................................................................................i

Table of Authorities........................................................................ ii

I.    INTRODUCTION ........................................................................1

II.   STATEMENT PURSUANT TO RULE 56.2(c)...........................2

    A.    Administrative Determination Under Review .....................2

    B.    Issues of Law...................................................................2

    C.    Summary Of Arguments ....................................................4

    D.    Statement Of Facts ...........................................................6

III.  STANDARD OF REVIEW..........................................................7

IV.   ARGUMENT............................................................................ 8

    A.    The Department Incorrectly Took Adverse Inferences Against Kumar ............................................................................8

        a.    There is no missing information with respect to affiliation................................................................12

        b.    Commerce failed to consider the record as a whole.................15

    B.    The Department Ignored its Statutory Mandate..................17

    C.    Kumar Acted to the Best of its Ability...............................20

    D.    The Department Should Not Have Deducted AD/CVD duties ..........22

V.    CONCLUSION............................................................................24

Table of Authorities

Court Cases

*Altax, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004)...................................10

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974) .......................................................................... 8

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012)....................................................................................... 8

*Chaparral Steel v. United States*, 901 F.2d 1097 (Fed. Cir. 1990) .......................10

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984).........7

*Diamond Sawblades Mfrs. Coal., v. United States,* 301 F.Supp.3d 1326, (Ct. Int'l Trade, 2018) ......................................................................................11

*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) .......................10

*Ferro Union, Inc. v. United States,* 44 F. Supp. 2d 1310 (Ct. Int'l Trade 1999) .................................................................................................................16

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034 (Fed. Cir. 1996).........................7

*Gerber Food (Yunnan) Co., Ltd. v. United States*, 387 F. Supp. 2d 1270 (Ct. Int'l Trade 2005) .......................................................................................... 9

*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022)...........19

*Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017)................10

*Mukand Ltd. v. United States*, 767 F.3d 1300 (Fed. Cir. 2014)..............................20

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ...................11

*Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372 (Fed. Cir. 2001) .......................................................................................................................7

*Risen Energy Co, Ltd. v. United States*, 477 F. Supp. 3d 1332 (Ct. Int'l Trade 2020) ........................................................................................................... 9

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)..................10

*Shanghai Tainai Bearing Co., Ltd. et al v. United States*, 658 F.Supp.3d 1269 (Ct. Int'l Trade, 2023).............................................................................21,22

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) ........................... 8

*Timken Co. v. United States*, 240 F. Supp. 2d 1228 (Ct. Int'l Trade 2002) ...........10

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) ................. 8

*Venus Wire Industries Pvt. Ltd. v United States*, 417 F.Supp.3d 1289 (Ct. Int'l Trade 2020)..................................................................................................21

*Wheatland Tube Company v. United States*, 495 F.3d 1355 (2007) ....................8,23

Statutes

19 U.S.C. § 1516a(a)................................................................................. 2

19 U.S.C. §1516a(b) ................................................................................. 7

19 U.S.C. §1673d(c)(5)............................................................................. 7

19 U.S.C. § 1677(e) ................................................................................16

19 U.S.C. § 1677e(a)................................................................................. 9

19 U.S.C. § 1677e(b) ............................................................................9,11

19 U.S.C. § 1677e(a)(2)............................................................................. 9

19 U.S.C. §1677m(d) ...................................................................2,3,5,17

Administrative

19 CFR § 351.102(b)(3)............................................................................13

19 CFR § 351.402 (f)(i)(A)(B) ...............................................................23

## I.   <u>INTRODUCTION</u>

This is an appeal from the Final Result of the §751 administrative review of Glycine from India (A-533-883)(June 1, 2021 – May 31, 2022). Plaintiff is an Indian producer and exporter who participated in the administrative review.

Kumar Industries  ( "Plaintiff" or "Kumar") assert the following errors in the final determination of the U.S. Department of Commerce ("the Department", "Commerce" or "DOC").:

- The Department erred when it found that Kumar had not cooperated with the Department.  The Department thus improperly took adverse inferences and incorrectly calculated the rate for Kumar using adverse facts available;

- The Department erred when it found that the information not provided by the two unrelated and uncooperative entities was relevant.   Rather, the information of such entities was irrelevant and thus the failure to provide such information was harmless error.

-  The Department, in the ordinary course of calculations, does not deduct antidumping duties from the invoice price in calculating U.S. price.  The Department, in its calculations in this review, included the amounts deposited as antidumping duties in the U.S. duty field and thus improperly deducted such duties in calculating U.S. price.

- 19 U.S.C. §1677m(d) requires the Department to inform a respondent of any deficiency in a questionnaire response and provide an opportunity to address such deficiency.   The Department failed to do so.  Such conduct was also contrary to the treatment of the other mandatory respondent.  The Department's last supplemental questionnaire was transmitted to Kumar on February 3, 2023 (PD125 at 1) while the last supplemental questionnaire was transmitted to the other mandatory respondent on July 19, 2023. (PD185 at 1)

## II.   STATEMENT PURSUANT TO RULE 56.2(c)

### A.    Administrative Determination Under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)  to contest Commerce's Final Determination published in the Federal Register as *Glycine from India (A-533-883): Final Results of Antidumping Duty Administrative Review; 2021-2022*,  88 Fed. Reg. 77,552 (Nov. 13, 2023).

### B.    Issues of Law

The Plaintiffs present the following issues of law.   In each instance, Commerce's decision was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

1. **No Basis to Support Finding of Non-Cooperation.**    Whether Commerce's finding that Kumar did not cooperate with the Department during the course of the Administrative Review was arbitrary and capricious and was thus an abuse of discretion and not otherwise in accordance with law.

2. **Information Purportedly Not Provided was Not Relevant.**   Whether it was appropriate for Commerce to take adverse inferences for the failure of unrelated third parties to supply certain information where such information was irrelevant and would have no impact on the calculation of any margin. The taking of adverse inferences was arbitrary and capricious, and was thus an abuse of discretion and not otherwise in accordance with law.

3. **The Department Improperly Deducted Antidumping Duties in Calculating U.S. Price.** Whether it was appropriate for Commerce to deduct antidumping duties in calculating U.S. price, and whether such deduction, which is contrary to established Department practice, was arbitrary and capricious, and was thus an abuse of discretion and not otherwise in accordance with law.

4. **The Department Failed to Inform Kumar of Any Deficiencies in its Response and Provide an Opportunity to Address Such Deficiencies.**  Whether it was appropriate for the Department to ignore the dictates of 19 U.S.C. §1677m(d) which requires the Department to inform a respondent of any deficiencies in its questionnaire response and provide an opportunity to address such deficiencies and

whether the failure to do so was thus an abuse of discretion and not otherwise in accordance with law.

### C.    Summary Of Arguments

- The Department erred when it found that Kumar had not cooperated with the Department.  The record establishes that Kumar was not related to and did not control, two unrelated third parties.  Accordingly, Kumar could not compel these third parties to provide information to the Department.   The question before the Department was not whether these third parties were, at some point, related to Kumar, the issue was whether, during the POR these third parties were related to Kumar.  Kumar provided all of the information in its presence including specific information establishing the non-ownership, non-affiliation and non-control of these entities.    The Department thus improperly took adverse inferences and incorrectly calculated the rate for Kumar with an application of adverse facts available;

- The Department erred when it found that the information requested from, but not provided by, the two unrelated and uncooperative entities was relevant.   In addition to providing substantial information regarding the ownership and control of these companies, Kumar also provided information establishing that these third parties did not produce subject

merchandise, did not supply an input used by Kumar and otherwise were not involved in the production, sale or distribution of the  subject merchandise.  Rather, even if such companies had been cross-owned, such companies would not have been required to supply detailed information as none of this information would be used.

- The Department calculated the margin based on the highest individual margin calculated for Kumar during the review.  In making such calculation, the Department improperly deducted antidumping duties deposited at the time of entry from the calculation of U.S. price.  The net result of this is an excessive U.S. price and an exaggerated margin.

- 19 U.S.C. §1677m(d) requires the Department to inform a respondent of any deficiency in a questionnaire response and provide an opportunity to address such deficiency.  The Department failed to do so.  Such treatment was also inconsistent with the treatment of the other mandatory respondent.  The Department's last supplemental questionnaire was transmitted to Kumar on February 3, 2023 (PD125 at 1) while the last supplemental questionnaire was transmitted to the other mandatory respondent on July 19, 2023. (PD185 at 1.)  This gap of five months means that the Department had sufficient time to ask Kumar for additional information.

**D.     Statement Of Facts**

On August 9, 2022, pursuant to a June 21, 2022 request for an administrative review filed by Kumar, (PD3) the Department deemed initiated the Administrative Review.  See *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 48459 (August 9, 2022). (PD11)

From October 20, 2022 through February 15, 2023 plaintiff submitted responses to the Department's questionnaires.  .  (PD32 at 1, PD59 at 1, PD75 at 1 and PD133 at 1).  The other mandatory respondent submitted responses through July 26, 2023.  (PD36 at 1, PD64 at 1, PD94 at 1, PD99 at 1, PD152 at 1, PD159 at 1, PD163 at 1 and PD187 at 1.)

On October 27, 2022 and December 12, 2022 Kumar provided substantial information about the two unrelated companies.  (BPID10, BPID12 to 22, BPID76 to 89, BPID108.)

On August 14, 2023, all parties submitted case briefs to the Department. (PD194 and PD195) and on August 28, 2023, all parties submitted rebuttal briefs to the Department. (PD199 and PD201)

On October 25, 2023, Kumar held a meeting the Department of Commerce officials (PD203) and on November 7, 2023 the Department made its final determination (PD204).

### III.    <u>STANDARD OF REVIEW</u>

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether "Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984).

If the statute is silent or ambiguous with respect to the specific issue, the Federal Circuit has held that *Chevron* deference is owed Commerce's statutory interpretations as to appropriate methodology. *Pesquera Mares Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir. 2001). That analysis entails determining whether Commerce's construction of an ambiguous statute is "permissible." *See Chevron,* 467 U.S. at 843. A "permissible" construction is understood in terms of reasonableness; only reasonable interpretations will be upheld by the Court. *See Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) *('Chevron* requires us to defer to the agency's interpretation of its own statute as long as the interpretation is reasonable."). To determine reasonableness, courts look to the express terms of the statute, the objectives of the

statute, and the objectives of the statutory scheme as a whole. *Wheatland Tube Co.*

*v. U.S.,* 495 F.3d 1355, 1361 (Fed. Cir. 2007).

It is axiomatic that Commerce may not exert its authority in an arbitrary or

capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371,

1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and

capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir.

2001). "{A} reviewing court must apply both standards {substantial evidence, and

arbitrary and capricious or contrary to law}, while  "an agency's finding may be

supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious

action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d

1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best

Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974). A final

determination which ignores critical evidence of record is arbitrary and capricious on its

fact.

## IV.  ARGUMENT:

### A. The Department Incorrectly Took Adverse Inferences Against Kumar

In the preliminary and final results, the Department took adverse inferences

against Kumar for its failure to provide certain information about [

         ] (hereafter "Company A") and [                              ] (hereafter

"Company  B").   Specifically,  the  Department  wanted  specific  information

consisting of audited financial statements to substantiate Kumar's claim of no relationship between it and company A and company B.  Notwithstanding Kumar's notification to the Department (BPID13 at 14-19, BPID76 at 13-14, BPID86 at 24-27 and BPI108 at 12-16.) that it could not do so, the Department did not propose any alternate information that it would be willing to accept.

The Department's decision, as detailed here, was legally unsupported and did not comply with the established standards for the taking of adverse inferences and the resultant application of adverse facts in the calculation.

The taking of adverse inferences and the application of adverse facts is a two-step process.   (*See* 19 U.S.C. § 1677e(a)-(b).)  First the Department must identify necessary information missing from the record and determine that a party has: (1) withheld requested information; (2) failed to provide information by established deadlines or in the form or manner requested; (3) significantly impeded the review; or (4) provided information that cannot be verified. 19 U.S.C. § 1677e(a)(2).  (S*ee also Gerber Food (Yunnan) Co., Ltd. v. United States*, 387 F. Supp. 2d 1270, 1280 (Ct. Int'l Trade 2005).  If the first test is not satisfied, the inquiry ends.   If the first test is satisfied, the Department must then make a second and separate finding that a party failed to cooperate to the best of its ability to justify the use of an adverse inference when "selecting among the facts otherwise available."   19 U.S.C. § 1677e(b).  *See Risen Energy Co, Ltd. v. United States*, 477 F. Supp. 3d 1332 (Ct.

Int'l Trade 2020).

Further, the Department cannot make this finding on scant evidence. Rather, any taking of adverse inferences must be supported by **substantial** evidence of record. Substantial evidence is "more than a mere scintilla," but "less than the weight of evidence." *Altax, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citation omitted).

Finally, it is axiomatic that the antidumping law is not intended to be applied in a punitive manner. *See Chaparral Steel v. United States*, 901 F.2d 1097 (Fed. Cir. 1990); *Timken Co. v. United States*, 240 F. Supp. 2d 1228, 1234 (Ct. Int'l Trade 2002) ("Commerce should adhere to the overriding goal of the antidumping law, which is not to create a punitive result…"). All of this combines to support the proposition that the Department's discretion to apply AFA is not unbounded, and the application of AFA is not intended to be overly punitive. Rather, the overall purpose of the statute, which is to calculate accurate dumping margins, must continue to be respected. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). The statute is intended to provide respondents with an "incentive to cooperate with Commerce's investigation, not to impose punitive damages." *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1276 (Fed. Cir. 2012);

*Diamond Sawblades Mfrs. Coal., v. United States,* 42 CIT Slip Op. 18-146 at 2 (October 23, 2018).

Accordingly, the taking of adverse inferences and the application of adverse facts is only permitted when Commerce properly finds that a party failed to cooperate to the best of its ability. *See* 19 U.S.C. 1677e(b). As part of this analysis, "{b}efore making an adverse inference, the Department must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation…" *Nippon Steel Corp. v. United States*, 337 F.3d, 1373, 1382 (Fed. Cir. 2003). This analysis requires both an objective and subjective showing that the party failed to do the maximum. *Id.* The subjective showing requires consideration of the respondent's lack of cooperation. *Id.*

In other words, even if use of <u>facts available</u> is warranted due to failure to fully answer a questionnaire, which is not the case here, that alone cannot support the taking of <u>adverse</u> inferences. ("An adverse inference may not be drawn merely from a failure to respond … only under circumstances in which it is reasonable for {Commerce} to expect that more forthcoming responses should have been made; *i.e.,* under circumstances in which it is reasonable to conclude that less than full cooperation has been shown." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003).)

The foregoing is clear from an examination of the facts. The primary

deficiency identified was the purported   inability of Kumar to provide any substantive documents to support its claim of non-affiliation with Company A and B.  (PD181 at 2, BPID136 at 2).  Commerce had requested the audited financial statements of Company A and Company B.  If Kumar had been related to Company A and B, it could have obtained this information, but as it was not related to Company A and B, it had no way to provide this information.  In fact, the Department did not examine the documents provided, but rather simply relied upon the fact that a single document – the audited financial statement of an unrelated party – was not provided.  As documented in its responses, Company A and Company B explicitly refused to supply their audited financials due to concerns about potential harm to their competitive position and Kumar presented this fact early in the review process. (BPID86 at 23 – 27)

Kumar did, however, provide other documentary information in support of its claim of non-affiliation.  As such, Kumar respectfully submits that the Department's finding ignores substantial evidence of record, and is thus arbitrary, unreasonable and not in accordance with law.  The facts, as applied to the law, are as follows:

### a.    There is no missing information with respect to affiliation

The term "affiliated person" is not nebulous and is clearly defined by regulation.  The regulations state:

> (3) Affiliated persons; affiliated parties. "Affiliated persons" and "affiliated parties" have the same meaning as in section 771(33) of the Act. In determining

whether control over another person exists, within the meaning of section 771(33) of the Act, the Secretary will consider the following factors, among others: Corporate or family groupings; franchise or joint venture agreements; debt financing; and close supplier relationships. The Secretary will not find that control exists on the basis of these factors unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product. The Secretary will consider the temporal aspect of a relationship in determining whether control exists; normally, temporary circumstances will not suffice as evidence of control.

19 CFR 351.102(b)(3)

Applying this definition, there can be no question that neither Company A nor Company B are affiliated with Kumar.

Kumar respectfully asserts that, based on the definition of "Affiliated Person", and based on the facts provided in response to Question 2 (c), Kumar is not affiliated with companies A and B. Question 2 (c) stated:

Provide an organization chart and description of your company's legal structure. Include any parent companies and subsidiaries of your company and all other persons affiliated with your company and provide a description of all such persons.

As an initial matter, Kumar provided detailed charts and supporting information setting for all of the affiliated parties detailing the nature of the relationships, activities, ownership and control. (BPID76 and 86). Neither Company A nor Company B are referenced in either these charts or the supporting documents. In its responses, Kumar provided comprehensive charts outlining the relationships. (BPID13 at 14 - 19) These Exhibits detail the nature of the relationship between Kumar and its affiliated companies, including relevant activities. The chart includes all the necessary information about Kumar's affiliates.

Critically, these documents do not list companies A and B because they are not related to Kumar.

Furthermore, in response to the direct inquiry from the Department regarding Kumar's affiliation with Company A and Company B in the second supplemental questionnaire, Kumar clarified that it has no affiliation with these companies. (BPID108 at 12-16) To obtain the requested information, Kumar diligently attempted to acquire the information from the respective companies through official letters and phone calls. In response, the two unrelated companies both confirmed **in writing** that they did not produce Glycine during the relevant period and did not sell Glycine produced in India or any other country to the home market, the United States market, or any third country market during that time. (BPID76 at 13-14, BPID86 at 24-27). Furthermore, both companies explicitly declined to disclose their audited financials due to concerns about potential harm to their competitive position. (BPID86 at 26-27) The refusal to disclose this information, combined with the Kumar information showing an absence of a relationship, is conclusive evidence that neither company is affiliated with Kumar. Furthermore, this is evidence that Kumar simply does not have the power to force compliance with Commerce demands from unrelated entities.

It is important to emphasize that both companies clearly stated in their written responses that they have no affiliation with Kumar. (BPID108 at 12-16) Therefore,

this confirms Kumar's lack of affiliation with Company A and Company B. Additionally, Kumar placed on the record copies of its correspondence with Company A and Company B detailing its request for information.

In sum, the facts of record are quite clear. Kumar and Company A and Company B are not related. In the absence of such relationship, Kumar could not force these entities to provide all of the requested information, and the relevance of this information is also questionable. Neither of these companies were involved in the sale, distribution, or production of Glycine, did not supply Kumar with any inputs, and did not do business with Kumar. (BPID76 at 13-14, BPID86 at 24-27, BPID108 at 12-16).

### b. Commerce failed to consider the record as a whole.

The Department failed to consider the record as a whole, but rather based its decision on an arbitrary decision to only accept one specific piece of data (audited financial statements of unrelated entities) not in the possession of Kumar and to take adverse inferences if this single document was not provided. As discussed in Section IV.A.a above, Kumar placed significant information on record established, which as a whole, conclusively established the lack of affiliation. This information consisted not only of correspondence, but also documents maintained in the ordinary course of business and documents filed with governmental authorities.

The Department is charged by the Courts to consider the full nature of

15

responses and explain why missing information is significant.  In *Ferro Union, Inc.*

*v. United States,* 44 F. Supp. 2d 1310 (Ct. Int'l Trade 1999).  the Court required the

Department to explain why the missing information was significant to the progress

of the investigation.  The Court stated,

> The Department must also explain why the absence of this information is of
> significance to the progress of the investigation. The Department stated in the Final
> Results that the lack of information regarding Companies A and B hindered The
> Department from requesting downstream sales data for the sales to A and B, which
> prevented the Department from calculating normal value pursuant to 19 U.S.C. §
> 1677b(a)(5). The Department also stated that it was unable to examine the common
> management and ownership of Saha Thai with the Siam Steel Group. Nonetheless,
> the court cannot conclude that this alone was a significant impediment, given The
> Department's misunderstanding of what it could properly expect of Saha Thai.
>
> * * *
>
> Further, The Department did not elaborate on the ramifications of the failure to
> identify Companies C and D, and ultimately determined that Company E did not
> produce subject merchandise. If overall the failure to identify these companies was
> of no significance to the progress of the investigation, then The Department cannot
> apply total adverse facts on the basis of the non-identification of these companies.
> *Ferro Union* at 52.

The Court in *Ferro Union, Inc.* ultimately remanded the Final Results to the

Department on the grounds that the Department did not properly apply 19 U.S.C. §

1677(e) and failed to conduct the required separate analysis under subsections (a)

and (b).  Subsection (a) requires a determination that necessary information is not

available and subsection (b) the taking of adverse inferences if the respondent does

not cooperate.

In the case at bar, the statutory test, as clarified by *Ferro Union,* should

control. The information requested by the Department was unnecessary for the

16

conduct of the review.   While the specific information requested by the Department was not provided, the alternate information provided all of the necessary information which would have been provided by the requested information.  This means that the first part of the statutory test – an absence of information – is not satisfied.

Further, the second part of the statutory test – a lack of cooperation – is also not satisfied.   As discussed in Section C below, Kumar fully cooperated and made its best efforts to provide the requested information to the Department.

Accordingly, the decision to use facts available and the taking of adverse inferences is not appropriate and the Department's decision to do so, is not supported by the law.

## B.    The Department Ignored its Statutory Mandate

The statute, the regulations and Department practice make it clear that the Department must review submissions in a timely fashion and cannot simply wait until the preliminary or final determination to announce that the submissions were deficient or incomplete.  19 U.S.C 1677m(d) is clear.   It states:

> (d)Deficient submissions
> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle. If that person submits further information in response to such deficiency and

either—
(1) the administering authority or the Commission (as the case may be) finds that such response is not satisfactory, or
(2) such response is not submitted within the applicable time limits, then the administering authority or the Commission (as the case may be) may, subject to subsection (e), disregard all or part of the original and subsequent responses.

This provision is clear and unequivocal. If a response is deemed deficient, and if sufficient time remains in the investigation or review, the Department must provide a notification of the deficiency and an opportunity to address the deficiency.

In this case, all of the prongs are met. The Department has identified a deficiency. Specifically, in the preliminary determination the Department publicly identified a deficiency, but by the preliminary determination there was no opportunity provide to correct the deficiency. However, in this case, there was clearly sufficient time for the Department to notify Kumar of the deficiency and seek a correction. In the case of Kumar, the last filing was made on February 15, 2023 (PD133). Such filing was presumably reviewed by the Department in a timely fashion and no further questions were asked by the Department. 135 days remained to the Department prior to the preliminary determination. In contrast, the other mandatory respondent continued to received supplemental questionnaires through July 26, 2023 (PD187) In other words, at the time of the purportedly deficient submission, the Department had determined that sufficient time existed for receiving responses for an additional 161 days by its action of sending questions to the other

mandatory respondent.

The Courts make it clear that the Department must comply with this statute. In *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) the Federal Circuit stated:

> Section 1677e(a)(2)(D) requires that the authorization to rely on adverse facts available is subject to § 1677m(d), which requires <u>Commerce to provide notice and an opportunity to remedy a deficiency. Commerce has no authority to apply adverse facts and inferences unless the respondent has failed to provide requested information when notified of the deficiency, and has not acted to the best of its ability in responding to such requests.</u> 19 U.S.C. § 1677e(a). See also Canadian Solar Inc. v. United States, 537 F. Supp. 3d 1380, 1398 (Ct. Int'l Trade 2021) (holding that "Commerce must give Canadian Solar an opportunity to correct any deficient information"); Shelter Forest Int'l Acquisition, Inc. v. United States, 497 F. Supp. 3d 1388, 1401 (Ct Int'l Trade 2021) ("<u>Commerce must raise identified deficiencies such as this one and provide respondents with an opportunity to explain, correct or supplement it.").</u>
> *Hitachi* at 1385 (Emphasis Added)

The record is clear. The Department has not provided any 'notice of deficiency' with regard to the details/information provided by Kumar concerning its non-affiliation with Company A and B. The Department did not act. It did not issue any supplemental questionnaire after February 2023, and did not ask for any additional documentation or support for Kumar's data.

Furthermore, the Department's decision not to provide any opportunity for Kumar to rectify or address any deficiency on record, or to provide additional specific details was arbitrary. In this proceeding, the Department has issued as many as seven supplemental questionnaires to the other mandatory respondent i.e., Avid Organics Private Limited ("Avid"), and the last two supplemental questionnaire

were issued to Avid after the issuance of the preliminary result. (PD187 at 1).

Kumar further submits that there an established practice of the Department to provide an opportunity to an interested party especially with respect to small companies such as "Kumar" to address the issue or extend clarification to their existing submission. See, e.g., *Mukand Ltd. v. United States*, 767 F.3d 1300 (Fed. Cir. 2014) at page 1304 (Commerce issued four supplemental questionnaires to the respondent who had several times not answered to Commerce's satisfaction also offered to discuss with the respondent the issues raised in its supplemental questionnaires, before Commerce determined that an adverse inference dumping margin was warranted). However, the Department did not do this with respect to Kumar. The Department simply received the supplemental questionnaire and asked no further questions.

### C.    Kumar Acted to the Best of its Ability

The law does not require perfection, nor does it require a party to provide documents not in its possession and out of its power to force production. Rather, it only requires that the respondent acts to the best of its ability. Critically, in this case, the evidence is replete with the steps taken by Kumar to obtain the requested information. Kumar had multiple discussions, in writing, with Company A and Company B and placed this on the record. (BPID76 at 13-14, BPID86 at 24-27 and BPID108 at 12-16.

Critically, there is no evidence of any kind that Kumar had any power to "force" Company A and Company B to provide this information. Critically, Kumar didn't even do business with Company A and B, and thus could not even have withheld their business to force compliance, nor is their any evidence that Kumar's business was "important" to Company A and B. (In fact, the absence of transactions between Kumar and Company A and Company B is essentially irrefutable evidence that Kumar's business was unimportant to Company A and Company B.) The Department simply cannot rationally put forward any method by which Kumar could force cooperation.

In the recent *Shanghai Tainai Bearing Co., Ltd. et al v. United States*, 658 F.Supp.3d 1269 (Ct. Int'l Trade, 2023) the Court found that Tainai's inability to provide certain information from certain unrelated suppliers did not justify the application of adverse facts. (See also *Venus Wire Industries Pvt. Ltd. v United States*, 417 F.Supp.3d 1289 (Ct. Int'l Trade 2020)) In *Shanghai Tainai*, while the unrelated suppliers supplied certain inputs, each individual supplier provided a small enough quantity such that Tainai did not have control such suppliers.

The *Shanghai Tainai* court stated:

> Although it is true that Shanghai Tainai purchased a large quantity of tapered roller bearing parts from its suppliers as a collective group, Commerce's analysis ignored the other side of the equation — whether such quantity was significant as to each supplier.
> * * *
> And when the Government did address Shanghai Tainai's arguments concerning the diversity of its supplier network, it did so by merely restating Commerce's

> finding that Shanghai Tainai accounted for the largest volume of entries of subject merchandise during the period of review and purchased a large quantity of tapered roller bearings from its suppliers. That ignored Plaintiff's argument and data suggesting that it was not a large enough customer of any one supplier to induce compliance with Commerce's information requests.
> *Shanghai Tainai* at 1285

The Shanghai Tainai court further stated:

> The Federal Circuit permits Commerce to draw an adverse inference against a cooperating party for the actions of its non-cooperative suppliers based on case-specific facts and analyses. Commerce's decision to invoke generalities to draw such an inference against Shanghai Tainai fails to meet this burden. Commerce also fails to discuss the incentives created by its decision to assess such a high dumping margin on a party the agency found to be cooperative. On remand, Commerce must first consider the record evidence regarding the control that Shanghai Tainai could have exerted over its diversified suppliers and recognize that a deterrence rationale applied against a cooperating party that lacks the ability to control its suppliers may be unfair to that party.
> *Shanghai Tainai* at 1289

If sufficient control to compel the provision of information does not exist where the respondent cannot exert control over unaffiliated diversified suppliers, it certainly cannot exist in this case where the unaffiliated parties are NOT suppliers to the respondent. In sum, Kumar made maximum efforts to obtain such information, and thus Kumar acted to the best of its ability.

### D. The Department Should Not Have Deducted AD/CVD duties.

In the final results, the Department assigned a rate to Kumar based on AFA based on the highest single individual transaction margin. Such rate, however, was incorrectly calculated as the Department improperly deducted AD/CVD duties from the U.S. price. This is contrary to long-established Department precedent. Specifically, the US antidumping law provides that in calculating the export price

(or the constructed export price), the Department **shall** deduct the amount of any antidumping duty or countervailing duty which the exporter or producer paid directly on behalf of the importer or reimbursed to the importer. See 19 CFR § 351.402 (f)(i)(A)(B).

This was confirmed by the Court of International Trade in *Wheatland Tube Company v. United States*, 495 F.3d 1355 (2007) wherein the Court stated:

> Accordingly, Commerce consistently has treated AD duties as special duties not subject to the requirement to deduct "United States import duties" (normal customs duties) from U.S. prices in calculating dumping margins.
> *Wheatland Tube* at 1361

The Department did not do so in this case. In the present case, the Department has calculated USNETPRI by deducting the ADD and CVD cash deposit from the U.S. price. Kumar submits that the Department's reduction of the U.S. price by the ADD and CVD deposit, which is the equivalent of actual antidumping and countervailing duty, is contrary to law and policy. The cash deposits that importer pays at the time of each entry into the United States are equal to the amount of the estimated antidumping or countervailing duties pending liquidation of entries of the merchandise. While the USDUTYU field included all duties, including the AD/CVD duty deposit, Kumar also provided the details as to the make-up of the USDUTYU variable establishing which portions of that variable are attributable to antidumping and countervailing duties. (BPID63 at 24 and 48) Kumar also requested that the Department adjust this field to avoid the improper inclusion of

such duty.  Kumar included a sample calculation of US Customs Duty (USDUTYU) reported under Field Number 36 that clearly indicates that the percentage/share of ADD and CVD cash deposit in the total US Custom Duty paid by importer during the time of exports of subject merchandise. (BPID63 at 24) This was further supported by corresponding form 7501's which show the deposit of such AD/CVD duties.  (BPID63 at 48)

Accordingly, the Department's deduction of antidumping and countervailing duties from U.S. price in calculating transaction specific margins, was contrary to established Department precedent and was an abuse of discretion.

## V.    <u>CONCLUSION</u>

In conclusion, the Department committed multiple errors in its final determination.   These errors included:

- The incorrect determination that necessary information was missing from the record, and thus it was appropriate to use facts available.  In fact, all of the information necessary for the determination was on the record.
- The determination to fill any purported gap with adverse facts, rather than neutral facts.   To the extent that any necessary information was not of record, alternate neutral facts were of record which could be used to fill the gap.
- The Department failed to comply with its statutory mandate to notify a respondent of deficiencies in its response and provide an opportunity for respondent to correct such deficiency.   In this matter, the Department did not notify respondent of any purported deficiency nor provide an opportunity to respond to such deficiency.  In this matter, the Department had sufficient time to do so, and in fact, issued the other mandatory respondent supplemental questionnaires for many months after the last questionnaire to Kumar.

- The Department's finding that Kumar failed to act to the best of its ability is unsupported by the record. Kumar exerted maximum effort to obtain cooperation from its unrelated non-suppliers, but was unable to do so. Under extant Court precedent, Kumar's efforts should be deemed as maximum efforts.
- The Department improperly deducted antidumping and countervailing duties from the U.S. price in calculating the transaction specific dumping margins. The Department precedent is clear that such duties should not be deducted.

Based on the foregoing, the Court should find that the Department's determination is not grounded in the law and fact, and represents an abuse of discretion. The Court should remand this matter to the Department with direction to correct such errors.

Respectfully submitted,

/s/ David Craven
David Craven

Counsel to Kumar Industries, Inc.