**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| KUMAR INDUSTRIES, | Court No. 23-00263 |
|                Plaintiff, | **PUBLIC VERSION** |
| v. | Business Proprietary Information Denoted by Brackets on Page 20 |
| THE UNITED STATES, | |
|                Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Deputy Director

OF COUNSEL

JOSEPH GROSSMAN-TRAWICK
Attorney
Office of the Chief Counsel for Trade
    Enforcement & Compliance
U.S. Department of Commerce

KELLY M. GEDDES
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-2867
kelly.geddes2@usdoj.gov

September 6, 2024

*Attorneys for the United States*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

KUMAR INDUSTRIES,

                Plaintiff,

        v.                                                    Court No. 23-00263

THE UNITED STATES,

                Defendant.

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record, the response thereto, the reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's final results are sustained; and it is further

ORDERED that judgment shall enter in favor of the United States.

_____
                                                    JUDGE

Dated:_____, 2024
       New York, NY

# <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2 ................................................................. 1

    I.     The Administrative Determination Under Review ................................. 1

    II.    Issues Presented For Review ................................................................. 2

STATEMENT OF FACTS ..................................................................................... 2

SUMMARY OF THE ARGUMENT ..................................................................... 6

ARGUMENT ......................................................................................................... 7

    I.     Standard Of Review ............................................................................... 7

    II.    Commerce's Application of Adverse Facts Available Is Supported
           By Substantial Evidence And Is Otherwise In Accordance With
           Law ......................................................................................................... 8

          A.    Legal Framework ...................................................................... 9

          B.    Commerce Properly Applied Facts Available To Kumar ........... 9

          C.    Kumar Did Not Cooperate To The Best Of Its Ability ............ 14

          D.    Commerce Notified Kumar Of Its Deficient Response And
              Provided Kumar An Opportunity To Remedy It ...................... 16

    III.   Commerce Properly Calculated Kumar's Export Price ........................ 18

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984)................................................. 7

*Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367 (Fed. Cir. 2021)................................................................................................................ 8

*Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318 (Fed. Cir. 2020) .............. 18

*Cleo Inc. v. United States*, 501 F.3d 1291 (Fed. Cir. 2007)............................................................ 8

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966)..................................................................... 7

*Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034 (Fed. Cir. 1996)................................................ 7

*INS v. Elias-Zacarias*, 502 U.S. 478 (1992) ................................................................................. 8

*Nan Ya Plastics Corp. Ltd. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) ............................. 9

*Nippon Steel Corp. v. United States*, 458 F.3d 1345 (Fed. Cir. 2006)........................................... 8

*Nippon Steel v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)..................................... 9, 15

*Shandong Dongfang Bayley Wood Co. v. United States*, 375 F. Supp. 3d 1339 (Ct. Int'l Trade 2019) ....................................................................................................................................... 17

*Shanghai Tainai Bearing Co., Ltd. et al v. United States*, 658 F. Supp. 3d 1269 (Ct. Int'l Trade 2023) ....................................................................................................................................... 14

*United States v. Eurodif S.A.*, 555 U.S. 305 (2009) ....................................................................... 7

## Statutes

19 U.S.C. § 1516a.............................................................................................................................. 7

19 U.S.C. § 1677a...................................................................................................................... 18, 19, 20

19 U.S.C. § 1677e.......................................................................................................................... 5, 9

19 U.S.C. § 1677e...................................................................................................................... passim

19 U.S.C. § 1677m.......................................................................................................... 9, 16, 17, 18

**Regulations**

19 C.F.R. § 351.307 ................................................................................................ 13

19 C.F.R. § 351.402 ................................................................................................ 20

**Administrative Determinations**

*Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 86
   Fed. Reg. 62508 (Dep't of Commerce Nov. 10, 2021)....................................... 3, 10

*Glycine from India: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87
   Fed. Reg. 67870 (Dep't of Commerce Nov. 10, 2022)....................................... 3, 10

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| KUMAR INDUSTRIES,<br><br>             Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>             Defendant. | Court No. 23-00263<br><br>**PUBLIC VERSION**<br>Business Proprietary Information<br>Denoted by Brackets on Page 20 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of United States Court of International Trade, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the administrative record filed by the plaintiff, Kumar Industries (Kumar). ECF No. 21. Kumar challenges certain aspects of the final results issued by the Department of Commerce in the 2021-2022 antidumping duty administrative review of glycine from India. As demonstrated below, the challenged determination of the Department of Commerce is supported by substantial evidence and is otherwise in accordance with law. Accordingly, we respectfully request that the Court deny Kumar's motion for judgment upon the agency record and sustain Commerce's determination.

**STATEMENT PURSUANT TO RULE 56.2**

**I.    The Administrative Determination Under Review**

The administrative determination under review is *Glycine from India: Final Results of*

*Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 77,552 (Dep't of Commerce Nov. 13, 2023) (P.R. 215)[1] (*Final Results*), and accompanying Issues and Decision Memorandum (IDM) (P.R. 205).  The period of review is June 1, 2021, through May 31, 2022. *See Final Results*.

**II.    Issues Presented For Review**

1.    Whether Commerce's application of an adverse inference to Kumar is supported by substantial evidence and is otherwise in accordance with law.

2.    Whether Commerce's decision to subtract antidumping and countervailing duties from Kumar's U.S. duties only if there was evidence that the U.S. duties actually contained antidumping and countervailing duties was supported by substantial evidence and in accordance with law.

**STATEMENT OF FACTS**

On August 9, 2022, Commerce initiated an administrative review of the antidumping duty order on glycine from India.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 48,459, 48,461 (Dep't of Commerce Aug. 9, 2022) (P.R. 11).  On September 22, 2022, Commerce selected Avid Organics Private Limited (Avid) and Kumar for individual examination as mandatory respondents.  *See* Respondent Selection Memorandum (Sept. 22, 2022) (P.R. 18, C.R. 3).

Commerce then issued the Initial Questionnaire to Avid and Kumar.  *See* Initial Questionnaire (Sept. 22, 2022) (P.R. 19).  In the Initial Questionnaire, Commerce stated that it was requesting information about Kumar's affiliates as well as Kumar itself.  *Id.* at A-3. Commerce provided a detailed definition of "affiliated persons."  *Id.* at I-1 – I-2.  Commerce

---

[1] "P.R." refers to documents from the public record, and "C.R." refers to documents from the confidential record.

requested that Kumar provide information on its business ownership, organization, and structure, including that of any affiliates. *Id.* at A-4 – A-6. Kumar identified certain affiliates and provided documentation concerning them, as well as lists purporting to include all its affiliates. *See* Initial Questionnaire Response at 7, Exhibits A-3(a) – A-4.

In the preceding two reviews, Kumar had indicated that Companies A and B (*see* Pl. Br. at 8 for confidential names of companies) were prior affiliates that had dissolved their relationships with Kumar; however, Commerce found evidence suggesting they were still affiliated. *See Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 86 Fed. Reg. 62508 (Dep't of Commerce Nov. 10, 2021), and accompanying IDM at 28-32; and *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2020–2021*, 87 Fed. Reg. 67870 (Dep't of Commerce Nov. 10, 2022), and accompanying IDM at 5-6. In the underlying proceeding, Kumar did not list Companies A and B in response to the Initial Questionnaire. *See* Initial Questionnaire Response at 7, Exhibits A-3(a) – A-4. Thus, Commerce requested that Kumar "explain in detail with supporting documents whether" Companies A and B "a. are affiliated with Kumar; b. produced glycine in India; c. imported glycine from China or any other third countries into India; {and} d; sold glycine from India or other countries to home market, United States, and/or third countries." First Supplemental Questionnaire (Nov. 24, 2022) (P.R. 67, C.R. 73) at 6. Commerce also requested that "{i}f any of these companies are not affiliated with Kumar, please provide supporting documents that demonstrate that these companies were not affiliated with Kumar during the {period of review}." *Id*.

In response, Kumar stated that Companies A and B "are not affiliated with Kumar" and that Kumar "had sufficiently explained this in detail {sic} submissions during previous

administrative reviews." First Supplemental Questionnaire Response (P.R. 75, C.R. 76) at 6.

Additionally, Kumar stated that it "made all the possible deliberations to get the information

requested in question no. 11 (b) to (d) from {Companies A and B} from official letters and

followed by telephonic calls." *Id.* Kumar stated that both companies confirmed that they did not

produce or sell glycine during the period of review, but were unwilling to provide audited

financial statements. *Id.* Kumar did not provide any further supporting documentation or

narrative explanation to support its representation that Companies A and B were not affiliated

with Kumar during the period of review.

      Commerce issued Kumar a Second Supplemental Questionnaire, again explicitly

requesting that Kumar provide narrative and supporting documentation regarding its affiliation,

or lack thereof, with Companies A and B during the period of review. Second Supplemental

Questionnaire (Feb. 3, 2023) (P.R. 125) at 4. Commerce reminded Kumar that it had asked for

this information in the prior questionnaire, and that it had applied an adverse inference to Kumar

in previous administrative reviews for failing to provide this same information. *Id.* Commerce

emphasized that Kumar must provide "more substantive information than just a statement saying

that Kumar is not affiliated with these companies." *Id.* In response, Kumar stated that it had

already provided a chart showing all its affiliates. Second Supplemental Questionnaire Response

(Feb. 15, 2023) (P.R. 133, C.R. 108) at 2. Kumar repeated its prior representations that it had no

affiliation with Companies A and B, that Companies A and B confirmed that they had not

produced or sold glycine during the period of review, and that Companies A and B refused to

provide audited financial statements. *Id.* at 2-3. Kumar further stated that in response to

Kumar's requests to Companies A and B, both companies stated they were not affiliated with

Kumar and confirmed that they had ended their business relationships with Kumar on a

particular date. *Id.* at 3.

On July 7, 2023, Commerce published the preliminary results. *See Glycine from India: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 43,277 (Dep't of Commerce Jul. 7, 2023) (*Preliminary Results*) (P.R. 182), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 169). Commerce preliminarily determined that necessary information was not available on the record, and that Kumar withheld requested information, failed to provide information by the specified deadlines, and significantly impeded the proceeding by failing to provide information and documents substantiating its claim of non-affiliation with Companies A and B. PDM at 4-5. As a result, Commerce determined it was appropriate to rely on facts otherwise available to calculate Kumar's rate, pursuant to 19 U.S.C. § 1677e(a). *Id.* Commerce also preliminarily determined that Kumar did not cooperate to the best of its ability. *Id.* at 6. As a result, Commerce used an adverse inference when selecting from among the facts otherwise available. *Id.* Commerce preliminarily selected the highest calculated individual margin for Kumar as its rate. *Id.* at 7.

After considering interested parties' comments on the preliminary results, Commerce issued its final results. *See Final Results*, 88 Fed. Reg. at 77,552. Commerce continued to apply an adverse inference to Kumar. IDM at 21. Furthermore, in response to Kumar's request that Commerce exclude amounts of antidumping and countervailing duties from the amount of U.S duties it reported for the purposes of calculating export prices for Kumar's U.S. sales, Commerce excluded such antidumping and countervailing duties for three transactions. IDM at 22; Kumar Final Application of Adverse Facts Available Memorandum (Final AFA Memorandum) (Nov. 6, 2023) (P.R. 209, C.R. 149) at 2. For those transactions, Kumar had provided supporting documentation that antidumping and countervailing duties were included in the reported amount

of U.S. duties.  Final AFA Memorandum at 2.  However, Commerce declined to exclude the

purported amount of antidumping and countervailing duties from the U.S. duties reported for

other transactions because the record lacked supporting documentation that antidumping and

countervailing duties were included in the U.S. duties reported.  *Id.*  Further, in numerous cases

the U.S. duties reported were lower than the antidumping and countervailing duties reported,

indicating that the U.S. duties could not have included those duties for all transactions.  *Id.*; IDM

at 22.

Kumar then brought this action, challenging Commerce's application of an adverse

inference as well as its decision to exclude antidumping and countervailing duties from the total

U.S. duties only for transactions for which Kumar had provided supporting documentation.

## SUMMARY OF THE ARGUMENT

Commerce's application of an adverse inference is supported by substantial evidence and

in accordance with law.  Commerce properly determined the application of facts otherwise

available was warranted because necessary information concerning Kumar's affiliation with

Companies A and B was not available on the record.  Commerce further determined that by

refusing to provide that information, Kumar had withheld requested information, failed to

provide information by the established deadlines, significantly impeded this administrative

review, and provided information Commerce could not verify.  Each of these findings

independently supports the use of facts otherwise available pursuant to 19 U.S.C. § 1677e(a).

Further, Commerce properly applied an adverse inference, pursuant to § 1677e(b), when

selecting from among the facts otherwise available because Kumar, in refusing to provide

adequate responses concerning its affiliations with Companies A and B, failed to cooperate to the

best of its ability.  Finally, by providing two supplemental questionnaires, Commerce fully

satisfied its duty to notify Kumar of its deficient response and provide it an opportunity to

remedy that response.

Commerce's calculation of the export prices for Kumar's U.S. sales was also supported by substantial evidence and in accordance with law. Commerce properly excluded antidumping and countervailing duties from the U.S. duties for certain transactions which Kumar demonstrated included antidumping and countervailing duties in the amount of reported U.S. duties. But Commerce was not required to accept Kumar's unsupported assertion that the reported U.S. duties for *all* its transactions included antidumping and countervailing duties, especially when, in numerous cases, the antidumping and countervailing duties were larger than the U.S. duties reported.

## ARGUMENT

### I.    Standard Of Review

The Court sustains any determination, finding, or conclusion by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) ("The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence."). Substantial evidence is "'more than a mere scintilla' and 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' taking into account the entire record, including whatever fairly detracts from the substantiality of the evidence." *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Further, when Congress entrusts an agency to administer a statute that demands

inherently fact-intensive inquiries, agency conclusions may be set aside only if the record is "so compelling that no reasonable factfinder" could reach the same conclusion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992); *see Borusan Mannesmann Boru Sanayi Ve Ticaret A.S. v. Am. Cast Iron Pipe Co.*, 5 F.4th 1367, 1374 (Fed. Cir. 2021) (explaining that this "highly deferential review standard recognizes Commerce's special expertise in antidumping duty investigations," and that Federal Circuit affords "tremendous deference" to Commerce's administration of antidumping laws). It is thus improper to overturn a determination "simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted). A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).

## II.    Commerce's Application of Adverse Facts Available Is Supported By Substantial Evidence And Is Otherwise In Accordance With Law

Commerce's application of an adverse inference to Kumar is supported by substantial evidence and in accordance with law. First, Commerce properly determined the application of facts otherwise available was warranted because necessary information was not available on the record, and that Kumar withheld requested information, failed to provide information by the established deadlines, significantly impeded this administrative review, and provided information Commerce could not verify. Second, Kumar failed to cooperate to the best of its ability with Commerce's requests for affiliation information. Finally, Commerce notified Kumar of its deficient response and provided it an opportunity to remedy that response in accordance with the statute.

### A.   Legal Framework

Commerce will rely on facts otherwise available to reach the applicable determination if "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(1), or if an interested party: "(A) withholds information that has been requested by {the Department}; (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to {19 U.S.C. § 1677m (c)(1) and (e)}; (C) significantly impedes a proceeding under the antidumping statute; or (D) provides such information but the information cannot be verified as provided for in 1677m(i)."  19 U.S.C. § 1677e(a)(2)(A)-(D).

Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" if it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information{.}"  19 U.S.C. § 1677e(b)(1).  This standard "requires the respondent to do the maximum it is able to do."  *Nippon Steel v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent."  *Id.*  Pursuant to this standard, it is irrelevant whether the respondent was intentionally evasive or whether respondent thought it had a valid legal basis for withholding the information requested of it.  *See Nan Ya Plastics Corp. Ltd. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016) ("Congress decided what requirements Commerce must fulfill in reaching its determinations, § 1677e(b), and we do not impose conditions not present in or suggested by the statute's text.").

### B.   Commerce Properly Applied Facts Available To Kumar

In accordance with the statute, Commerce first determined whether application of facts otherwise available was warranted.  IDM at 12-14.  Commerce made that determination by reasonably finding that there was necessary information missing from the record, and that Kumar

had withheld requested information, failed to provide it by the deadline, significantly impeded the administrative review, and provided information that could not be verified. *Id.* Accordingly, Commerce found that all of the bases for applying facts otherwise available pursuant to 19 U.S.C. § 1677e(a) were satisfied, though any one of those bases would be sufficient. This determination was amply supported by record evidence and should be sustained.

As discussed above, Commerce repeatedly requested information from Kumar concerning whether Companies A and B were affiliated with Kumar during the period of review. *See* Initial Questionnaire at A-3 – A-6; First Supplemental Questionnaire at 5; Second Supplemental Questionnaire at 4. Distinguishing transactions with unaffiliated entities from transactions with affiliated entities is essential for accurately calculating the normal value of subject merchandise.

Further, Commerce had found in past administrative reviews that Kumar provided conflicting information concerning its affiliation with Companies A and B, and Kumar never provided adequate documentation supporting its representation that Companies A and B were no longer affiliated with Kumar. *See* IDM at 12-13 (citing *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2018-2020*, 86 Fed. Reg. 62508 (Dep't of Commerce Nov. 10, 2021), and accompanying IDM at 28-32; and *Glycine from India: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 67870 (Dep't of Commerce Nov. 10, 2022), and accompanying IDM at 5-6). In those prior reviews, Kumar had provided retirement deeds indicating Companies A and B had dissolved their affiliation with Kumar, but the deeds were contradicted by other record evidence. *See* 2018-2020 IDM at 28-29 (Kumar's partner's tax returns showed receipt of income from Companies A and B during period of review); 2020-2021 IDM at 5-6 (evidence in record suggested Kumar's partners had not resigned

from positions as partners in Companies A and B, contrary to Kumar's representations).  Given

this history, Commerce emphasized the need to provide substantive support for Kumar's claim of

non-affiliation, and warned Kumar that Commerce might apply an adverse inference if Kumar

failed to provide such support.  *See* Second Supplemental Questionnaire at 4.

Nonetheless, Kumar repeatedly refused to provide more than uncorroborated assertions

that it was not affiliated with Companies A and B.  It provided a chart of affiliates that did not

include Companies A and B, a statement that Kumar was not affiliated with Companies A and B,

and correspondences with Companies A and B in which they asserted that they did not produce

or sell glycine and were not affiliated with Kumar.  *See* Initial Questionnaire Response at

Exhibits A-3 – A-4;  First Supplemental Questionnaire Response at 6;  First Supplemental

Questionnaire Response at Exhibit A-12.1; Second Supplemental Questionnaire Response at

Exhibit A-18.  But Kumar never provided any documents kept in the ordinary course of business

that substantiated its claim of non-affiliation.  Commerce made clear in its Second Supplemental

Questionnaire that the sorts of assertions Kumar had provided would not be sufficient to avoid an

adverse inference, especially when Kumar had submitted information in past reviews

contradicting assertions that it was not affiliated with Companies A and B.  *See* Second

Supplemental Questionnaire at 4.  Yet Kumar refused to provide any additional documentation.

Based on Kumar's repeated refusal to provide more reliable support for its claim that it

was not affiliated with Companies A and B, Commerce determined to apply facts otherwise

available.  Commerce reasoned that "if {Kumar} is no longer affiliated with Companies A and

B, it should have in its possession reliable and substantive documents proving the severance of

its affiliation with Companies A and B and it should not have to rely on Companies A and B to

provide the requested information."  IDM at 15.  Commerce also noted, in its memorandum

explaining its determination to apply an adverse inference, that even the limited information provided by Kumar was contradictory, because Kumar claimed Companies A and B had not many any sales of glycine in the home market during the period of review, but the letters from Companies A and B to Kumar indicated that they had made such sales.  *See* Preliminary Adverse Facts Available Memorandum (June 29, 2023) (P.R. 181, C.R. 136) at 1.  Commerce concluded that Kumar's failure to supply more reliable documentation undermined Kumar's submissions, and that Commerce could not rely on those submissions to calculate an accurate dumping margin.  IDM at 14-15.  Thus, Commerce reasonably determined that necessary information was missing from the record, and that Kumar had withheld requested information, failed to produce it by the deadline, impeded the proceeding, and provided information that was not verifiable.  Commerce therefore properly concluded that the use of facts otherwise available was appropriate pursuant to 19 U.S.C. § 1677e(a).

Kumar argues that no information was missing from the record because "Kumar provided detailed charts and supporting information setting for all of the affiliated parties detailing the nature of the relationships, activities, ownership and control" and "{n}either Company A nor Company B are referenced in either these charts or the supporting documents."  Pl. Br. at 13.  As a threshold matter, this argument is not sufficient to reverse Commerce's use of facts otherwise available, because Commerce also based that determination on its findings that Kumar had satisfied each of the criteria in 19 U.S.C. § 1677e(a)(2), any one of which serves as a sufficient independent basis for applying facts otherwise available even if no necessary information is missing from the record.

Further, Commerce considered the charts and other information provided by Kumar, but found that Kumar's claimed affiliations, particularly its claimed lack of affiliation with

Companies A and B, needed to be corroborated by more reliable documentation, such as "substantive documents proving the severance of its affiliation with Companies A and B." IDM at 15. Commerce is not obligated to accept Kumar's assurance that its charts contained information concerning all its affiliates. Rather, Commerce is entitled to "verify factual information" that it relies on in an antidumping duty proceeding. 19 C.F.R. § 351.307. Commerce sought to do so here, informing Kumar in both supplemental questionnaires that Commerce needed additional documentation beyond what Kumar initially provided. Kumar chose not to provide such information. In the prior two administrative reviews, Kumar at least provided *some* documentation in the form of retirement deeds for Companies A and B, though such documentation was found unreliable due to contradictory evidence in the record. *Id*. at 15. Here, rather than availing itself of a fresh opportunity to build an accurate and complete record with respect to its affiliation with Companies A and B, Kumar provided even less responsive documentation than it did in the two prior reviews.

Kumar next argues that Commerce "failed to consider the record as a whole, but rather based its decision on an arbitrary decision to only accept one specific piece of data (audited financial statements of unrelated entities) not in the possession of Kumar and to take adverse inferences if this single document was not provided." Pl. Br. at 15. But Commerce never made any request for audited financial statements from Companies A and B. Rather, Commerce requested "supporting documentation" substantiating Kumar's claimed non-affiliation, which Kumar could have provided in any form, provided it was sufficiently reliable. IDM at 13-16; First Supplemental Questionnaire at 5; Second Supplemental Questionnaire at 4. The issue was not that Kumar failed to provide a specific document that was redundant to information already on the record, *see* Pl. Br. at 16-17, but rather that Kumar failed to provide *any* form of reliable

support for the assertions it made concerning essential aspects of its business relationships.

### C.    Kumar Did Not Cooperate To The Best Of Its Ability

Having found that the criteria for applying facts otherwise available were satisfied, Commerce properly applied an adverse inference under 19 U.S.C. § 1677e(b) upon finding that "Kumar failed to cooperate to the best of its ability because Kumar failed to provide the documentary support to establish the reported lack of affiliation with Companies A and B, and failed to explain why it could not provide the requested documentary support." IDM at 16.

This determination was fully supported by record evidence, for similar reasons to those discussed in the prior section. Commerce observed that Kumar had failed to provide requested information despite three opportunities to do so, and that Kumar had sought to rely on information it had submitted in past reviews despite that fact that Commerce had found that information unreliable. IDM at 14-15. Commerce further explained that Kumar would reasonably be expected to possess "reliable and substantive documents proving the severance of its affiliation with Companies A and B." *Id.* at 15. In other words, Commerce reasonably concluded that Kumar could have—but did not—provide adequate information concerning its affiliation with Companies A and B, and that it had therefore failed to cooperate to the best of its ability. An adverse inference was therefore appropriate pursuant to 19 U.S.C § 1677e(b).

Kumar's sole argument contesting Commerce's finding that Kumar failed to cooperate to the best of its ability is that Kumar "made maximum efforts to obtain such information" from Companies A and B. Pl. Br. at 20-22. Kumar cites to *Shanghai Tainai Bearing Co., Ltd. et al v. United States*, 658 F. Supp. 3d 1269, 1285-89 (Ct. Int'l Trade 2023), where the Federal Circuit observed that the plaintiff did not have power to induce its suppliers to provide information to Commerce, and that an adverse inference based on those suppliers' non-cooperation might be unfair to the cooperating plaintiff. Pl. Br. at 21-22. Kumar argues that the present case is similar

14

because Kumar could not force Companies A and B to provide information corroborating their lack of affiliation with Kumar. *Id*. at 20-22. However, Commerce found that Kumar failed to cooperate to the best of its ability because it failed to provide information *in its possession* demonstrating its purported lack of affiliation or termination of its business relationship with Companies A and B:

> In this administrative review, the burden of evidentiary production belongs to Kumar because it possesses the necessary information on its affiliation status with Companies A and B. Kumar, not Companies A and B, is the respondent at issue. Kumar is in a position to possess information concerning its affiliation status with both Companies A and B, not just with Company A or Company B. In the last two completed administrative reviews, Kumar purported to have the information in its possession concerning its affiliation status with Companies A and B, *e.g.*, Kumar's partners' retirement deeds, but we determined that Kumar provided misleading and unreliable information and applied {a} total {adverse inference} to Kumar. . . .
>
> We find that Kumar had information regarding its affiliation status with Companies A and B because, if it is no longer affiliated with Companies A and B, it should have in its possession reliable and substantive documents proving the severance of its affiliation with Companies A and B and it should not have to rely on Companies A and B to provide the requested information. Still, Kumar failed to provide information that we requested. Indeed, had Kumar put forth its "maximum effort," the information would have been placed on the record; doing so required Kumar only to act to the best of its ability in being familiar with the records "maintain{ed} in its possession, custody, or control."

IDM at 14-15 (quoting *Nippon Steel*, 337 F.3d at 1383) (internal citations omitted).

In addition, Commerce found that "even if Kumar's repeated failure to submit various types of information that we requested in initial and supplemental questionnaires means that such information was not available in its possession, failure to cooperate by not maintaining adequate records is also failure to act to the best of its ability to comply with a request for information, as Kumar knew that its affiliation status has been an issue since the investigation and in the two

immediately preceding administrative reviews." *Id*. at 16.

Accordingly, Commerce's conclusion that Kumar failed to cooperate to the best of its ability, and the resulting application of an adverse inference, was supported by the record and in accordance with law.

### D. Commerce Notified Kumar Of Its Deficient Response And Provided Kumar An Opportunity To Remedy It

Kumar contends that Commerce failed to comply with its statutory obligation to inform a party of a deficiency and provide an opportunity to remedy the deficiency. Pl. Br. at 17-20 (citing 19 U.S.C. § 1677m(d)). However, Commerce complied with this requirement by issuing two supplemental questionnaires to Kumar explaining how its responses were deficient and how Kumar could remedy them. IDM at 13.

The statute provides that "{i}f the administering authority … determines that a response to a request for information under this title does not comply with the request, the administering authority … shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this title." 19 U.S.C. § 1677m(d). Further, "{i}f that person submits further information in response to such deficiency and … the administering authority … finds that such response is not satisfactory… then the administering authority … may, subject to subsection (e), disregard all or part of the original and subsequent responses." *Id*.

Kumar's claim that Commerce did "not {} provide any opportunity for Kumar to rectify or address any deficiency on record, or {} provide additional specific details" is inaccurate. Pl. Br. at 19. As previously discussed, after Kumar made no mention of Companies A and B in its initial questionnaire response concerning Kumar's affiliates, Commerce issued a supplemental

questionnaire specifically requesting information on Kumar's affiliation status with Companies A and B and that Kumar "provide supporting documents that demonstrate that these companies were not affiliated with Kumar during the {period of review}." First Supplemental Questionnaire at 5. Upon reviewing Kumar's response to the supplemental questionnaire and finding it deficient, Commerce issued another supplemental questionnaire notifying Kumar of the deficiency, explaining why its prior response was deficient, and explaining what information it must provide to substantively respond to Commerce's request. Second Supplemental Questionnaire at 4. Commerce even reminded Kumar in the questionnaire that Kumar's lack of cooperation on this issue in the prior two administrative reviews caused Commerce to apply an adverse inference. *Id*. Thus, Commerce identified the deficiency and provided Kumar an opportunity to remedy that deficiency, in accordance with section 1677m(d). *See Shandong Dongfang Bayley Wood Co. v. United States*, 375 F. Supp. 3d 1339, 1342 (Ct. Int'l Trade 2019) ("Commerce satisfies its obligations under § 1677m(d) when it issues a supplemental questionnaire specifically pointing out and requesting clarification of the party's deficient responses."). Rather than remedying the deficiency by providing the supporting documentation that Commerce requested, Kumar reiterated its assertions regarding lack of affiliation with Companies A and B and termination of their business relationship, while claiming it could not provide underlying documentation supporting these assertions.

Kumar argues that Commerce has "an established practice" "to provide an opportunity to an interested party especially with respect to small companies such as 'Kumar' to address the issue or extend clarification to their existing submission." Pl. Br. at 20. However, Kumar is not an inexperienced party. On the contrary, its prior reviews have made it particularly familiar with Commerce's need for affiliation information, and with the possibility of an adverse inference if

17

that information is not provided.  IDM at 15-16.  Even so, Commerce provided Kumar with multiple opportunities to correct its deficiency, even reminding Kumar that Commerce had applied an adverse inference in the prior reviews for Kumar's lack of cooperation on this issue. Second Supplemental Questionnaire at 4.

Kumar appears to be arguing that Commerce had a never-ending obligation to provide additional supplemental questionnaires until it was satisfied with Kumar's answers, as long as there was enough time left in the review to do so.  This ignores the plain language of the statute, discussed above, which allows Commerce to ignore a party's responses once Commerce has notified the party of a deficiency and received a response that is still not satisfactory.  19 U.S.C. § 1677m(d).  As Kumar had refused to provide any significant additional information in response to the second supplemental questionnaire, there was little point in issuing further questionnaires asking for the same information yet again.

## III.    Commerce Properly Calculated Kumar's Export Price

In calculating the export price, Commerce's determination to only exclude antidumping and countervailing duties from the amount of U.S. duties paid for transactions where Kumar demonstrated that the antidumping and countervailing duties were actually included in the U.S. duties reported was supported by substantial and in accordance with law.

When determining the estimated weighted average dumping margin for an exporter or producer in an administrative review, Commerce compares the normal value of a product, which reflects the price of the product in its home market or in a third country, to the export price or constructed export price (the U.S. price), which reflects the price at which the product is sold to an unaffiliated purchaser in the United States.  *See Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1322 (Fed. Cir. 2020).  Pursuant to 19 U.S.C. § 1677a(c)(2)(A), Commerce is required to reduce the export price or the constructed export price by "the amount,

if any, included in such price, attributable to any additional costs, charges, or expenses, and

United States import duties, which are incident to bringing the subject merchandise from the

original place of shipment in the exporting country to the place of delivery in the United States."

19 U.S.C. § 1677a(c)(2)(A).

Thus, to calculate the export price for Kumar's sales of subject merchandise, Commerce

reduced the export price by the amount of U.S. duties reported by Kumar, in accordance with 19

U.S.C. § 1677a(c)(2)(A). IDM at 22. But as Commerce acknowledged in the final results and as

Kumar notes in its brief, the "United States import duties" referred to in the statute, also known

as "U.S. duties," do not include antidumping and countervailing duties. IDM at 22; Pl. Br. at 23.

For three transactions, Kumar provided documentation supporting its assertion that the amount

of U.S. duties it reported included antidumping and countervailing duties. *Id*. Accordingly, for

those three transactions, Commerce removed the amount of antidumping and countervailing

duties from the amount of U.S. duties that Kumar reported; subsequently, Commerce reduced the

export price by the revised amount of U.S. duties, in accordance with 19 U.S.C.

§ 1677a(c)(2)(A). *Id*.; Final AFA Memorandum at 2.

Aside from those three transactions, Commerce did not make an adjustment to Kumar's

reported U.S. duties because Kumar did not provide supporting documentation or otherwise

demonstrate that it had included antidumping and countervailing duties in the amount of U.S.

duties it reported for the remainder of its transactions. IDM at 22. Kumar asserts that all its U.S.

sales transactions include antidumping and countervailing duties in the reported U.S. duties, but

does not provide evidence to support this. On the contrary, record evidence contradicts Kumar's

claim. Final AFA Memorandum at 2. In particular, for numerous transactions, the amount of the

antidumping and countervailing duties that Kumar alleged is included in the amount of U.S.

duties exceeds the total amount of U.S. duties it reported. *Id.* (citing Kumar Case Brief (Aug. 14, 2023) (P.R. 195, C.R. 140) at 44-46). For instance, five transactions report a U.S. duty rate of [      ] percent, but Kumar requests that Commerce subtract antidumping and countervailing duties totaling 13.61 percent. *Id.* For another transaction, Kumar reported a U.S. duty rate of [      ] percent, and would have Commerce subtract 17.36 percent in antidumping and countervailing duties. *Id.* For several other transactions, Kumar reported [

]. *Id.* Had Commerce excluded the alleged amounts of antidumping and countervailing duties from the amount of U.S. duties Kumar reported, Commerce would have calculated an impossible *negative* amount that Kumar had allegedly paid in U.S. duties for numerous transactions. *Id.*

Kumar cites to 19 C.F.R. § 351.402(f)(1)(i)(A)-(B) for the proposition that "the Department shall deduct the amount of any antidumping duty or countervailing duty which the exporter or producer paid directly on behalf of the importer or reimbursed to the importer." Pl. Br. at 23. As an initial matter, the cited regulation does not govern Commerce's calculation of the U.S. price at issue here; rather, that provision deals with scenarios where an exporter or producer directly pays the amount of an antidumping or countervailing duty on behalf of the importer or reimburses the importer for such amounts. 19 C.F.R. § 351.402(f). Here, as discussed above, Commerce's calculation of the export price and deduction of the amount of antidumping and countervailing duties from the U.S. duties is governed by 19 U.S.C. § 1677a(c)(2)(A). Regardless, for those transactions where Kumar demonstrated the reported U.S. duties included antidumping and countervailing duties, Commerce did reduce the reported amount of U.S. duties by the amount of antidumping and countervailing duties, as required by statute. IDM at 22; Final AFA Memo at 2. Commerce did not do so for the remaining

transactions, not because it contests Kumar's interpretation of the law, but because there was not sufficient evidence to show that the U.S. duties included antidumping and countervailing duties. Kumar fails to cite any such evidence now.

Kumar does argue that it submitted supporting evidence, but the evidence it cites concern the three transactions for which Commerce did reduce the U.S. duties by the amount of antidumping and countervailing duties. Specifically, Kumar argues that "Kumar included a sample calculation of US Customs Duty (USDUTYU) reported under Field Number 36 that clearly indicates that the percentage/share of ADD and CVD cash deposit in the total US Custom Duty paid by importer during the time of exports of subject merchandise. (BPID63 at 24) This was further supported by corresponding form 7501's which show the deposit of such antidumping and countervailing duties. (BPID63 at 48)." *See* Pl. Br at 24; *see also* Initial Questionnaire Response at Exhibit C-11 (C.R. 63); and First Supplemental Response at Exhibit C-19 (C.R. 80). That Kumar provided a "sample calculation" demonstrating that for one transaction, antidumping and countervailing duties were indeed included in the amount of U.S. duties does not prove that such duties were included for all transactions. As demonstrated above, it was not plausible that all sales transactions included antidumping and countervailing duties because the amount of reported U.S. duties was sometimes less than the amount of antidumping and countervailing duties that Kumar claimed was included. Similarly, the sample form 7501 did not demonstrate that the reported U.S. duties for all transactions included antidumping and countervailing duties. Rather, it showed that one particular transaction included antidumping and countervailing duties in the U.S. duties, and Commerce did subtract those duties from the U.S. duties for that transaction. IDM at 22; Final AFA Memo at 2-3.

Finally, Kumar claims that Commerce departed from precedent and abused its discretion.

Pl. Br. at 22, 24.  But again, Commerce does not disagree that its practice is to subtract

antidumping and countervailing duties from the total U.S. duties, before subtracting those duties

from the sales price in order to calculate export price.  Rather, Commerce found there was

insufficient evidence on the record of this case that the reported U.S. duties actually included

antidumping and countervailing duties.  Kumar offers no examples of when Commerce made an

adjustment to U.S. duties when the record lacked evidence that U.S. duties included antidumping

and countervailing duties, let alone where calculations based on such an assumption would yield

a negative amount of U.S. duties.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Kumar's motion, sustain

Commerce's final results, and enter judgment for the United States.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

OF COUNSEL:                                          /s/ Kelly Geddes
JOSEPH GROSSMAN-TRAWICK                KELLY GEDDES
Attorney                                             Trial Attorney
Office of the Chief Counsel                   U.S. Department of Justice
    for Trade Enforcement & Compliance   Commercial Litigation Branch
U.S. Department of Commerce             P.O. Box 480, Ben Franklin Station
Washington, D.C.                             Washington, DC 20044
Tel:  (202) 365-7536                          Tel: (202) 307-2867
Email:  Joseph.Grossman-Trawick@trade.gov   Email: Kelly.Geddes2@usdoj.gov

September 6, 2024                             Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,444 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s Kelly Geddes</u>
Kelly Geddes